UNITED STATES DISTRICT COURT
MIDDLE  DISTRICT OF LOUISIANA

SCOTT WILFONG                              CIVIL ACTION NO. 11-CV-128

VERSUS                                     JUDGE HAIK

STATE OF LOUISIANA BOARD                   MAGISTRATE JUDGE HANNA
OF ETHICS, ET AL

### *REPORT AND RECOMMENDATIONS*

Before the undersigned for Report and Recommendation on referral from the district

judge is the Motion to Dismiss Pursuant to FRCP Rule 12(b)(6), filed by Defendants State

of Louisiana, Board of Ethics, through the Supervisory Committee on Campaign Finance

Disclosure, the eleven individual Board members, and the Board investigator[1]. [Rec. Doc.

5] The motion is opposed by Plaintiffs.  The parties presented oral argument before the

undersigned on February 6, 2012. After considering the briefs and  arguments of the parties,

and  for  the  reasons  set  out  below,  the  undersigned  recommends  that  the  Motion  be

GRANTED as to the federal claims asserted and that the Court decline to retain jurisdiction

over the remaining state law claims, remanding those claims back to the state court.

### *Factual Background:*

In  August,  2008,  a  confidential,  unsworn  "Complaint  on  Possible  Violation  of

Campaign Finance Disclosure Laws" was sent to the defendant Louisiana Board of Ethics,

referencing and attaching a flyer alleged to have been mailed to more than 18,000 people in

---

[1]Defendant "John Doe" is not a mover herein.

the City of Baton Rouge. [Petition for Damages, Rec. Doc. 5-2, p. 3] The complaint identified Plaintiff Scott Wilfong[2] as the individual responsible for processing and mailing the flyer and likely to have the most information regarding the funding for the flyer. [Rec. Doc. 5-2, p. 4] The complaint asserted that the flyer, signed by Rev. Charles Matthews, stated a personal/political attack on Baton Rouge Mayor Kip Holden. [Rec. Doc. 5-2, p. 3] The plaintiff has confirmed that he was engaged to produce and bulk mail the flyer in accordance with his anonymous client's instructions, which he did, using his own return mailing address on the flyer. [Rec. Doc. 5-2, pp. 5-6]

As a result of receipt of the complaint, the Louisiana Board of Ethics voted to open a confidential investigation into the matter reported. [Rec. Doc. 5-2, p. 4] The plaintiff Scott Wilfong was interviewed by telephone by Board investigator Robin Gremillion, with Wilfong believing at the time that Gremillion was an attorney for the Board. [Rec. Doc. 5-2, p. 7] During the interview, Wilfong described his involvement in the flyer's distribution, namely that he was paid to do the job; he deposited money received for that work into his bank account, and he paid for the preparation, processing and mailing of the flyer out of funds received. [Rec. Doc. 5-2, p. 7] Also during the conference, Wilfong offered to provide documentation showing that he had received money to do the job; he had deposited that

_____

[2]Plaintiff Scott Wilfong identifies himself as an elected member of the Republican State Central Committee and a former member of the East Baton Rouge Parish Alcoholic Beverage Control Board, positions "of considerable trust and reputation." [Rec. Doc. 5-2, pp. 14-15]

money into his bank account, and he had paid for the postage, preparation, and processing of the flyer out of the deposited funds.  He delivered those documents to the investigator thereafter. [Rec. Doc. 5-2, pp. 7-8]

The Board issued a subpoena duces tecum calling for production of all documents in Plaintiffs' possession related to the production and mailing of the flyer. [Rec. Doc. 5-2, p. 8]  Wilfong produced copies of the check to the printer, the invoice for the printing/mailing of the flyer, the check paid to the postmaster and copies of bank deposits of funds and other documentation. [Rec. Doc. 5-2, p. 8]  In the course of the Board's investigation, other discovery was undertaken, including interviews with sub-vendors of Plaintiffs. [Rec. Doc. 5-2, p. 8]  Since Wilfong's return address appeared on the flyer, he made no attempt to conceal his or his company's involvement in the mailing of the flyer.  He also spoke freely with the news media, giving public statements and interviews regarding the incident at issue. [Rec. Doc. 5-2, p. 6]

By late July, 2009, the Board ordered a public hearing on the issue whether Plaintiff had violated provisions of La. R.S. 18:1501.1, relative to the filing of campaign finance disclosure reports. [Rec. Doc. 5-2, pp. 4, 8]  By  November 19, 2010, the Board voted to dismiss all charges against Plaintiffs.[Rec. Doc. 5-2, p. 5] A statement exonerating Wilfong was made to the media by one of the Board members. [Rec. Doc. 5-2, p. 9]

*Procedural Background:*

Plaintiffs Scott Wilfong and Capital Business Services, LLC filed suit in the

Nineteenth Judicial District Court on January 27, 2011. [Rec. Doc. 5-2, p. 1]They named as defendants the State of Louisiana, Board of Ethics, through the Supervisory Committee on Campaign Finance Disclosure, eleven individual Board members, and the individual identified as the 'investigator' for the Board. Also referenced as defendant was the alleged complainant John Doe. The Petition alleged that Plaintiffs were damaged as a result of the defendants' initiation[3] and perpetuation of ethical misconduct charges relative to Plaintiffs' alleged failure to file certain campaign finance disclosure reports. [Rec. Doc. 5-2, p. 3] The claims are characterized in the pleading as claims of malicious prosecution, commenced without probable cause and continued without development of any evidence to support the initial decision to investigate and/or charge the plaintiffs with wrongdoing. Claims are made against the Board and its individual members/employees in their official and personal capacities. Plaintiffs allege that the named individual Board members all voted in favor of pursuit of the public hearing referenced above. [Rec. Doc. 5-2, p. 8] However, assert Plaintiffs, "there is not presently nor has there ever been any proof of any sort which supports the Board's allegation and charge that Scott Wilfong and/or Capital Business Services, LLC violated La. R.S. 18:1501.1 relative to a failure to file a campaign finance disclosure report." [Rec. Doc. 5-2, p. 13-14] The petition further alleges that the defendants were "wrongful,

---

[3]The complaint is alleged to have been made by Defendant John Doe, who Plaintiff contends "caused the original proceeding to be initiated and perpetuated when s/he caused details of his/her non-sworn ethics complaint to be leaked to members of the Baton Rouge press...effectively "pressuring" the Louisiana Board of Ethics to take action against Plaintiff...." [Rec. Doc. 5-2, p. 3, 10]

malicious, and grossly negligent" in their actions, sufficient, per the plaintiff, to "pierce the statutory immunity otherwise afforded" by La. R.S. 18:1511.1(c). The claims are based upon provisions of 42 U.S.C. §1983 and the state law tort of malicious prosecution.

On March 7, 2011, the suit was removed to Federal Court based on federal question jurisdiction. [Rec. Doc. 1] On June 3, 2011, the Motion to Dismiss was filed by the defendants(excluding John Doe), asserting federal and state immunity defenses for the individual defendants and 'no cause of action' arguments relative to the state tort claims referenced in the petition. [Rec. Doc. 5]  On June 24, 2011, an opposing memorandum was filed by Plaintiffs. [Rec. Doc. 7] A response was filed by the movers on July 21. 2011. [Rec. Doc. 10] Shortly thereafter, the case was transferred and reassigned to the Western District for further handling. [Rec. Doc. 11]

***The Rule 12(b)(6) Standard:***

A motion to dismiss for failure to state a claim, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, is appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim.  *Ramming v. United States*, 281 F.3d 158, 161(5th Cir. 2001).  When considering such a motion, a district court must limit itself to the contents of the pleadings, including any attachments thereto.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498(5th Cir. 2000).  The court must accept all well-pleaded facts as true, and it must view them in the light most favorable to the plaintiff.  *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205(5th Cir. 2007)(internal quotations omitted), quoting *Martin K.*

*Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467(5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196(5th Cir. 1996). But, conclusory allegations and unwarranted deductions are not accepted as true, and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. V. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929(2007), quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209(1986).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 U.S. at 570. The plaintiff's obligation is "to provide the 'grounds' of his 'entitle[ment] to relief' [and] requires more than labels and conclusions." *Id* at 555, citing *Papasan*, 478 U.S. at 286. The allegations must be sufficient to "raise a right to relief above the speculative level," and the pleading must contain something more than a statement of facts which create merely a suspicion of a legally cognizable right of action. *Id* at 555. While detailed factual allegations are not required, the plaintiff's obligation is to provide the grounds of his entitlement to relief, and "a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 55 U.S. at 555. *See also Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1950(2009). As the court stated in *Twombly*, if the plaintiff fails to allege facts sufficient to "nudge[][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id* at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Ashcroft*, 129 S.Ct. At 1949. The determination is context-specific, requiring the court to draw on its common sense and judicial experience. In *Ashcroft*, the Supreme Court explained further:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id at 1950.

The Fifth Circuit explained the *Twombly* plausibility standard of pleading succinctly, as applied to Fed. R. Civ. P. 8(a)(2):

> The complaint(1) on its face (2) must contain enough factual matter(taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of the claim] does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257(5th Cir. 2009), quoting *Twombly*, 550 U.S. at 556.

Contrary to the argument that the decisions in *Twombly* and *Ashcroft* have changed the pleading requirements under Fed. Rule Civ. P. 8, the Fifth Circuit emphasized that *Twombly* does not create a heightened pleading standard and does not alter, but only "explicates" Rule 8(a)(2), because *Twombly* itself recognizes pleading requirements can only be changed by amendment of the Federal Rules. *Lormand*, at 258, n. 29.

Thus, while the court is not to give the 'assumption of truth' to conclusions, factual allegations remain so entitled. Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts, which need not be detailed or specific, allow the court to reasonably infer that the defendant is liable for the misconduct alleged. This analysis is not substantively different from that set forth in *Lormand*, *supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim. The standard, under the specific language of Rule 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based. The standard is met by the 'reasonable inference' the court must make that, with or without discovery, the facts set forth a plausible claim for relief under the particular theory of law provided there is a 'reasonable expectation; that "discovery will reveal relevant evidence of each element of the claim." *Lormand*, 565 F.3d at 257, *Twombly*, 550 U.S. at 556.

In considering the Rule 12(b)(6) motion, the court may consider the complaint itself and only a very few other categories of materials. The court may consider exhibits attached to the complaint, documents that the complaint incorporates by reference(provided they are both undisputed and central to the pleaded claims), and materials of which the court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338(5th Cir. 2008). The parties may supply affidavits and other materials either in support of or in

opposition to a motion for failure to state a claim, but doing so will re-cast the motion.  If the court, in its discretion considers the extrinsic evidence, the motion must be converted into a request for summary judgment under Rule 56.

The motion before the court is filed as a Rule12(b)(6) motion, but affidavits with attachments are submitted in support of the motion.  Plaintiffs call upon the court to either strike the affidavits or make the Rule 56 conversion, giving them "ample time" to respond. [Rec. Doc. 7, p. 3] In considering the positions of the parties, the undersigned has reviewed the original Petition for Damages. [Rec. Doc. 5-2]  Having done so, the undersigned finds it unnecessary to review the documents attached to the motion.  Therefore, this motion will be considered as a Rule 12(b)(6) motion.

### *ANALYSIS AND DISCUSSION*

***Plaintiffs' Claims under 42 U.S.C. §1983***:

To state a claim under 42 U.S.C. §1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Randolph v. Cervantes*, 130 F.3d 727, 730(5th Cir. 1997).  Conduct "under color of law" for purposes of  §1983 involves a misuse of power, "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40(1988).  It has also been said that a person acts under color of state law when he acts with authority possessed by virtue of his employment

with the state.  *Id.*

In this case, the alleged state actors/movers herein are the Louisiana Board of Ethics, its members, and the investigator defendant employed by the Board. In considering the color of law allegations, the undersigned looks to the formation and authority of the subject Board of Ethics, created by Louisiana state law at La. R.S. 42:1132.  Under provisions of the Louisiana Election Campaign Finance Act, the Board of Ethics is designated to function as the supervisory committee to administer and enforce provisions of the Act. La. R.S. 18:1511.1.  La. R.S. 18:1511.4(A) provides that the supervisory committee(the Board) may investigate any apparent or alleged violation of the Election Campaign and Finance Act.  By a two-thirds vote of its membership, the Board may initiate such an investigation when, as a result of its review of reports, other documents or information, it determines that there is reason to believe a violation of the Act has occurred.  The Board shall initiate such an investigation when it makes such a determination upon receipt of a sworn complaint filed with the supervisory committee by any person who believes a violation of the law has occurred.  *Id.* The Board has the power and authority to hold hearings, to subpoena witnesses, compel production of records and papers, and "to do all that is necessary" to effect the provisions of the Act. La. R.S. 18:1511.4(C)(1).  When the results of the investigation indicate that a violation of the Act has occurred which is subject to civil penalties, the supervisory committee is authorized to file civil proceedings to obtain a judgment from the district court.  La. R.S. 18:1511.5.  Board investigations are confidential, and statutory

provisions limit the scope of information which may be disclosed by the supervisory committee. The committee is allowed to divulge that a review or investigation was made or a complaint received with regard to a person or committee, and, upon investigation, no substantial reason was found to believe that a violation occurred. La. R.S. 18:1511.8(A). On this authority, and to the extent Plaintiff's allegations challenge the exercise of this authority by Board members, it is clear that the individual Board members named as defendants herein were state actors at all times relevant to these proceedings, and the Court so finds. As to the investigator defendant Robin Gremillion, the undersigned finds that as an employee of the Board acting in furtherance of the Board's mission, Defendant Gremillion's actions as alleged were those of a state actor taken under color of law.

*The Official Capacity Claims:*

Official capacity suits are actions against the governmental entity of which the official is a part. A judgment in a §1983 lawsuit against an official in his official capacity imposes liability against the entity he represents. Such suits are "only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 362, 116 L.Ed.2d 301(1991); *Woodard v. Andrus*, 419 F.3d 348, 352(5th Cir. 2005). Thus, like the State or an arm of the State, state officials sued in their official capacities are not persons subject to suit under §1983. *Skelton v. Camp*, 234 F.3d 292, 296(5th Cir. 2000). In the Memorandum in Opposition to the Motion to Dismiss[Rec. Doc. 7], Plaintiffs concede that the State of Louisiana cannot be sued for money damages in a

§1983 action, and Plaintiffs further concede that "to the extent the Board and the individual defendants(in their official capacities only) allege immunity from suit under 42 U.S.C. 1983, such immunity is well-established." [Rec. Doc. 7, p. 9] And, per Plaintiffs, any attempts "to set forth damage claims arising under 42 U.S.C. 1983 against the Board or the Board Members in their respective official capacity...are hereby disclaimed." [Rec. Doc. 7, p. 9] On that disclaimer and based on applicable law, it is the recommendation of the undersigned that any/all §1983 claims by Plaintiffs against the Board of Ethics and the Board member/employee defendants, in their *official* capacities, should be DISMISSED.

*The Individual/Personal Capacity Claims and the Immunity Defenses:*

The Supreme Court, in *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 362, 116 L.Ed.2d 301(1991) explained that on the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. While the plaintiff in a personal-capacity suit need not establish a connection to governmental policy or custom, officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law. *Hafer*, 502 U.S. at 25. It is well-settled that state actors performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396(1982); *Blackwell v. Barton*, 34 F.3d 298, 201(5th Cir. 1994).

State actor defendants may assert the privilege of "qualified immunity," which grants them immunity from suit rather than a mere defense to liability. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272(2001). The touchstone of the qualified immunity question is the concept of objective legal reasonableness. *Anderson v. Creighton*, 483 U.S. 635, 639, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523(1987); *Brown v. Bryant County Oklahoma*, 53 F.3d 1410(5th Cir. 1995). The key question is whether an objectively reasonable official, situated similarly to the defendant, could have believed that his conduct did not violate the plaintiff's constitutional rights, in light of clearly established law and the information possessed by the defendant at the time of the alleged wrongful conduct. *Harlow*, supra; *Blackwell*, supra; *Brown*, supra.

The grant or denial of qualified immunity involves a two-step analysis. First, the court determines whether the plaintiff has demonstrated the violation of a clearly established constitutional right under the current state of the law. Second, if the plaintiff has alleged such a constitutional violation, the court decides whether the defendant's conduct was objectively reasonable, measured by reference to the law clearly established at the time of the challenged conduct. *Pierce v. Smith*, 117, F.3d 866, 872(5th Cir. 1997). If the defendant official's conduct did not violate a clearly established constitutional right, the official is entitled to qualified immunity. *Nerren v. Livingston Parish Police Dept*. 86 F.3d 469, 473(5th Cir. 1996); *Jones v. Collins*, 132 F.3d 1048(5th Cir. 1998). Critical is a determination whether the plaintiff has asserted a violation of a constitutional right at all,

but even if the official's conduct violated a clearly established constitutional right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable. *Nerrin* at 473(citing *Spann v. Rainey*, 987 F.2d 1110, 1114(5th Cir. 1993)(quoting *Salas v. Carpenter*, 980 F.2d 299, 310(5th Cir. 1992)).

In the instant case, Plaintiffs allege that Defendants initiated and perpetuated ethical misconduct charges relative to Plaintiffs' alleged failure to file certain campaign finance disclosure reports. [Rec. Doc. 5-2, para. 2] They allege that the individual Board member defendants voted to open a private investigation of Plaintiffs based on non-sworn information, without probable cause, and they allege that the Board members voted to conduct a public hearing to explore whether Plaintiffs had violated provisions of La. R.S. 18:1501.1. [Rec. Doc. 5-2, para. 11, 13, 34, 52-54, 80-82] They confirm that after the private investigation and public hearing, Plaintiffs were "formally and completely exonerated and acquitted" by the Board. [Rec. Doc. 5-2, para. 17] Plaintiffs assert that the actions of the Board member defendants were "wrongful, malicious, and grossly negligent." [Rec. Doc. 5-2, para. 58, 61-62] The allegations are characterized by Plaintiffs as claims of malicious prosecution. [Rec. Doc. 5-2, para. 64]

There is no federal constitutional claim based solely on the tort of malicious prosecution. *See Castellano v. Pragozo*, 352, F.3d 939, 942(5th Cir. 2003)(*en banc*).  In the Fifth Circuit, a plaintiff cannot allege a constitutional violation by satisfying the state law elements of malicious prosecution alone. *Izen v. Catalina*, 398 F.3d 363, 366(5th Cir. 2005).

"Rather, the claimant must allege that officials violated specific constitutional rights in connection with a malicious prosecution." *Cuadra v. Houston Independent School Dist.*, 626 F.3d 808, 812 (5th Cir.2010) (internal quotations omitted) [citing *Castellano v. Fragozo*, 352 F.3d 939, 945 (5th Cir.2003)]. In *Castellano*, the Fifth Circuit stated: "[C]ausing charges to be filed without probable cause will not without more violate the Constitution. So defined, the assertion of malicious prosecution states no constitutional claim." *Castellano v. Fragozo* at 953.

Although the Petition for Damages contains general references to Plaintiffs' "fundamental rights of press, contract, and free speech guaranteed ...by and through the First Amendment," [Rec. Doc. 5-2, para 102] and the rights to enjoy freedom of press and free speech and freedom from unreasonable seizures" pursuant to the First and Fourth Amendments [Rec. Doc. 5-2, para 114], the pleadings contain no factual allegations supportive of such claims, and conclusory statements and legal arguments within the pleadings will not suffice. The Fourth Amendment covers only 'searches and seizures,' neither of which took place in the instant case. A Fourth Amendment seizure occurs when there is a governmental termination of freedom of movement through the means intentionally applied. *City of Sacramento v. Lewis*, 523 U.S. 833, 844, 118 S.Ct. 1708, 140 L.#d.2d 1043(1998). The plaintiff was not arrested or detained, and he was not subjected to criminal prosecution at all. While it is correct that Plaintiff was issued a subpoena by the defendant Board, Plaintiff has not challenged that action, and, in fact, Plaintiff volunteered production

of the documents made subject of the subpoena.  The type of injury the Fourth Amendment is intended to redress is the deprivation of liberty leading to and accompanying prosecution, not prosecution itself.

There are no factual allegations to establish that Plaintiff's First Amendment rights "of press, contract, and free speech"  were infringed by the defendants as suggested in the pleadings. [Rec. Doc. 5-2, para. 102, 114] The plaintiffs allege that information about the Board's investigation was somehow leaked to the media, either by the John Doe defendant or by some other defendant. However, the pleadings demonstrate that the plaintiff acted to give statements and interviews in the press, and the alleged incorrect and negative reporting by the news media described in the pleading is not attributed to the mover defendants. [Rec. Doc. 5-2, p. 15]  In oral argument, Plaintiffs' counsel argued that the delay in bringing the Board investigation to closure caused Plaintiff to lose business opportunities, however, the undersigned finds those bare assertions to constitute items of alleged damages, without rising to constitutional levels. "Mere injury to reputation, even if defamatory, does not constitute the deprivation of a liberty interest." *Finch v. Fort Bend Indep. Sch. Dist*., 333 F.3d 555, 561(5th Cir. 2003).  Finally, the statutory provisions which empower and regulate the Board defendants also provide an avenue for affected parties (candidates, prospective witnesses or any person whose books, records, or other documents are subject of subpoena), for good cause shown, to seek and obtain protection from the district court to protect such person from annoyance, embarrassment, oppression, or undue burden or expense. La. R.S.

18:1511.4(C)(2). There is no indication in the pleadings that Plaintiffs sought to exercise this due process right during the investigative process beyond the pleading reference to "a certain procedural step" taken by Plaintiff to challenge the Board's jurisdiction. [Rec. Doc. 5-2, p. 15]

As to the claims of Plaintiffs against the Board investigator Robin Gremillion-that she held herself out to Plaintiff as an attorney and verbally threatened/badgered Plaintiff during her telephone interview of him-such verbal harassment is not sufficient to constitute an actionable §1983 claim. Those claims can only be characterized as state law tort claims.

Since the undersigned finds that Plaintiffs have failed to articulate a viable §1983 claim against any defendant, the Court need not continue with the immunity analysis and the §1983 inquiry ends. *Freemin v. Gore*, 483 F.3d 404, 411(5th Cir. 2007); *Mace v. City of Palestine*, 333 F.3d 621, 623-24(5th Cir. 2003). The individual defendants/movers are entitled to qualified immunity. On that basis, the undersigned recommends that the federal claims of Plaintiffs be DISMISSED for the failure to establish a constitutional deprivation.

### The State Law Claims:

The Petition for Damages also recites Plaintiffs' state law claims of malicious prosecution and other tort claims; the Rule 12(b)(6) motion contains the moving defendants' claims of entitlement to immunity per Louisiana state law. Although 28 U.S.C. § 1367 confers supplemental jurisdiction over plaintiffs' state law claims, the assertion of supplemental jurisdiction may be declined if all claims over which the court has original

jurisdiction are dismissed. 28 U.S.C. § 1367(3). "When all federal claims are dismissed, the district court enjoys wide discretion in determining whether to retain jurisdiction over the remaining state law claims." *Welch v. Thompson*, 20 F.3d 636, 644 (5th Cir. 1994). "The Supreme Court in *United Mine Workers of America v. Gibbs*, emphasized that '[n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of the applicable law.'" *Noble v. White*, 996 F.2d 797,799 (5th Cir. 1993)(citation omitted). Because plaintiffs' federal claims will be dismissed by this ruling, the court will not have original jurisdiction over their remaining state law claims, and therefore, it is recommended the court decline to retain supplemental jurisdiction over plaintiffs' remaining state law claims and remand the case to the Nineteenth Judicial District for the Parish of East Baton Rouge from which it was removed.

### *Conclusion and Recommendations*

The undersigned finds there is no basis for claims brought against the Board, its members or its employee in their official capacities under §1983 and the plaintiffs do not dispute this finding. Therefore, IT IS RECOMMENDED that the official capacity claims be DISMISSED WITH PREJUDICE.

The undersigned further finds that to the extent the plaintiffs have alleged the tort of malicious prosecution, they have not pled a claim actionable under § 1983 against the Board members or Ms. Gremillion. Further, the plaintiffs have not pled the deprivation of a

-18-

constitutional right, and as a result the Board members and the Board employee are entitled to qualified immunity from suit. Therefore, IT IS RECOMMENDED that all federal claims against the Board members and Ms. Gremillion, in their individual capacities, be DISMISSED WITH PREJUDICE.

Finally, since there are no remaining claims over which the court would have original jurisdiction, IT IS RECOMMENDED that the case be REMANDED to the Nineteenth Judicial District Court for the Parish of East Baton Rouge.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association*, 79 F.3d 1415(5th Cir. 1996).

Signed at Lafayette, Louisiana this 5th day of March, 2012.

-19-